## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SECURITIES AND EXCHANGE COMMISSION,**
**100 F Street, NE**
**Washington, DC 20549-4010,**

        **Applicant,**

**v.**

**RICHARD GROSSMAN,**
**259 Oakford Street**
**West Hampstead, NY11552,**

        **Respondent.**

**C.A. No.: 16-1041**

## MEMORANDUM OF LAW
## IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE
## AND AN ORDER REQUIRING COMPLIANCE WITH COMMISSION SUBPOENA

The Securities and Exchange Commission ("Commission" or "SEC") respectfully submits this memorandum in support of its Application, pursuant to Section 21(c) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(c), to compel Respondent Richard Grossman ("Grossman") to comply with a Subpoena seeking the production of documents and testimony related to possible violations of the federal securities laws ("Subpoena").

## PRELIMINARY STATEMENT

This matter arises out of Grossman's refusal to comply with a Subpoena issued by the SEC in connection with its formal investigation into potential violations of the federal securities laws related to suspicious trading in shares of Ohr Pharmaceutical, Inc. ("Ohr"). The Subpoena requires Grossman to produce documents which show, among other things, his acquisition and disposition or sale of Ohr common stock and his communications during the two weeks prior to Ohr publicly releasing the results of an exploratory study of its lead product. The Subpoena also required Grossman to appear at the SEC's headquarters in Washington, D.C. to provide testimony relating to

his suspicious trading activity.  The requested documents and testimony are unquestionably relevant to the SEC's ongoing investigation into possible violations of the federal securities laws. Grossman's counsel has indicated that Grossman will not comply with the Subpoena, and will refuse to produce any documents and will not appear for testimony, absent a court order directing him to do so.

### STATEMENT OF FACTS

On December 1, 2015, the staff of the SEC's Division of Enforcement (the "Staff") initiated an informal inquiry into possible violations of the federal securities laws related to suspicious trades by certain persons and entities in shares of Ohr.  Snyder Decl. ¶¶ C.  Ohr is a Delaware corporation, headquartered in New York, with common stock registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the NASDAQ Stock Market under the symbol "OHRP."  *Id*. ¶ D.  This matter was opened to inquire into suspicious trading in Ohr's common stock ahead of a public announcement prior to the U.S. equity markets opening on March 27, 2015.  *Id*. ¶ E.  The announcement disclosed disappointing topline results from an exploratory study evaluating Ohr's lead product as a treatment for the wet form of age-related macular degeneration.  *Id*. ¶¶ E-F.  Grossman, a resident of West Hempstead, New York, traded Ohr shares before the public announcement, but after directors and officers at Ohr had knowledge of the study results.  *Id*. ¶¶ G-H.  Grossman is a former business partner of an Ohr director and knows another individual who is an officer at Ohr.  *Id*. ¶ H.  Ohr's announcement revealed that the treatment had failed to meet one of the main goals in the study.  *Id*. ¶ F.  The day of the public announcement, Ohr common stock closed at $2.74, down $5.99 or approximately 68.6 percent from the previous day's close.  *Id*.  Grossman's trading was extremely timely.  He sold 10,834 shares of Ohr common stock the day before the public announcement, thereby avoiding losses of approximately $60,000.  *Id*. ¶ H.

On January 11, 2016, pursuant to Sections 19(c) and 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77s(c) & 77t(a), and Sections 21(a) and 21(b) of the Exchange Act, 15 U.S.C. §§ 78u(a) & (b), the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation entitled IN THE MATTER OF TRADING IN THE SECURITIES OF OHR PHARMACEUTICAL, INC. (the "Formal Order"). *Id*. ¶ I. The Formal Order authorizes the Division of Enforcement to investigate whether certain persons and entities violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 thereunder. *Id*. ¶ J. The Formal Order authorizes specific Division of Enforcement attorneys to compel the production of documents and testimony as part of that investigation. *Id*.

On April 18, 2016, attorneys in the SEC's Division of Enforcement ("SEC Counsel") served the Subpoena upon Grossman by mail at his home in West Hempstead, New York. *Id*. ¶ M. The Subpoena required Grossman to produce, by May 2, 2016, documents and communications relating to his purchase, acquisition, sale, or disposition of securities in Ohr. Snyder Decl. Ex. 2 ¶ 1. The Subpoena also sought documents and communications relating to Ohr, including but not limited to its exploratory Phase II clinical trials relating to OHR-205 ("squalamine") to treat the wet form of age-related macular degeneration. *Id*. ¶¶ 2-3. The Subpoena also sought copies of all forms of communication with anyone affiliated with Ohr during the narrow time period of March 11, 2015 through March 26, 2015, and copies of all calendars, address books, and contact lists from January 1, 2014 to the present. *Id*. ¶¶ 4-5. The Subpoena further requested documents sufficient to identify all telephone and telecommunications accounts, all bank accounts, and all security and brokerage or investment accounts held by Grossman, with all requests limited to the prior two years. *Id*. ¶¶ 7-9. Finally, the Subpoena compelled Grossman to appear for testimony at the SEC's Headquarters in Washington, D.C. on June 1, 2016. *Id*.

3

On May 2, 2016, SEC Counsel left a voicemail for Grossman.  Snyder Decl. ¶ P.  In response to the voicemail, Mr. John Arlia, of the Wenger and Arlia law firm in New York, New York, informed SEC counsel by telephone on May 2, 2016, that he would be representing Grossman with respect to the Subpoena.  *Id*.  Mr. Arlia further informed SEC counsel that the SEC had issued what Mr. Arlia characterized as an "administrative subpoena" and that Grossman, because he was not registered with the SEC, was not subject to the SEC's Subpoena. *Id.* ¶ Q.  As a result, Mr. Arlia stated that he would advise Grossman not to comply with the Subpoena absent a court order.  *Id*.  SEC Counsel contacted Mr. Arlia by telephone on May 6, 2016, and provided him with further details concerning the process of obtaining a court order to enforce the Subpoena.

*Id.* ¶ R.  During that conversation, Mr. Arlia reiterated that he would advise Grossman not to comply with the Subpoena, and not to produce documents or appear for testimony, absent a court order. *Id.*

On May 20, 2016, SEC Counsel sent a letter to Mr. Arlia reviewing the events outlined above and stating the Commission's intention to initiate Subpoena enforcement proceedings in the U.S. District Court for the District of Columbia.  *Id.* ¶ S.

On May 24, 2016, Mr. Arlia sent a letter to SEC Counsel reiterating his position and stating that his client "wishes for a neutral Magistrate to determine whether such an Administrative Subpoena is enforceable."  *Id.* ¶ T.  Mr. Arlia also stated that he was authorized to accept service of Subpoena enforcement papers on behalf of his client.  *Id*.

No documents have been produced by Grossman to date, and Grossman failed to appear for testimony on June 1, 2016.  *Id.* ¶ O.

## ARGUMENT

### I.  Jurisdiction And Venue Are Proper

When a subpoenaed party refuses to comply with an SEC subpoena, jurisdiction is vested in the United States District Courts to enforce such subpoena upon application by the SEC.  15

U.S.C. §§ 77v(b), 78u(c).  Accordingly, this Court has jurisdiction over the subject matter of this application and may issue an order directing Grossman to comply with the Subpoena.

Venue is proper before this Court because an SEC subpoena enforcement action may be brought in any district court "within the jurisdiction of which such investigation or proceeding is carried on."  15 U.S.C. § 78u(c).  The present investigation is being conducted by Staff located at the SEC's headquarters in Washington, D.C., and the Subpoena was issued and returnable in Washington, D.C.  Therefore, venue for the enforcement of the Subpoena lies in this district.

## II.    The Subpoena Satisfies All Requirements For Enforcement

To enforce an administrative subpoena, a court must be satisfied that (i) the inquiry has a legitimate purpose, (ii) the subpoena was issued in accordance with the required administrative procedures and (iii) the information sought is reasonably relevant to some subject of the inquiry.  *United States v. Powell*, 379 U.S. 48, 57-58 (1964).[1]  Once these threshold criteria are met, the burden shifts to the opposing party to establish that the subpoena is unreasonable.  *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973). The burden of showing unreasonableness "is not easily met."  *Id*.  None of these elements are in controversy on this application as Grossman has not – nor could he – contest the Subpoena on grounds of SEC authority.

### A.    The SEC's Inquiry Has A Legitimate Purpose

Congress created the SEC as an independent regulatory agency having the primary responsibility to enforce the federal securities laws and thus primary responsibility to protect the integrity of the nation's capital markets.  Toward that end, in Section 21(a) of the Exchange Act, Congress gave the SEC broad authority to conduct such investigations *as it deems necessary* in order to determine whether any person "has violated, is violating or is about to violate" any

---

[1]    *See also Penfield Co. v. SEC*, 330 U.S. 585 (1947); *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978); *SEC v. Blinder, Robinson & Co., Inc.*, 681 F. Supp. 1, 4 (D.D.C. 1987); *SEC v. Gulf Res., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 99,174 (D.D.C. Apr. 15, 1983); *SEC v. Dresser Indusries, Inc.*, 453 F. Supp. 573, 557 (D.D.C. 1978), *aff'd*, 628 F.2d 1368 (D.D.C. 1980).

provisions of the federal securities laws.  *See* 15 U.S.C. § 78u(a); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984); *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376-77 (D.C. Cir. 1980).  Further, Congress gave the SEC authority to investigate "any facts, conditions, practices or matters" that, "*in its discretion*," the SEC deems necessary or proper to aid in the enforcement of the federal securities laws.  15 U.S.C. § 78u(a)(1) (emphasis added).

Courts routinely have recognized that, given this broad statutory authority, "there is virtually no possibility" that the SEC, in commencing an investigation or issuing a subpoena, is acting ultra vires.[2]  Indeed, as the Supreme Court explained in *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), an agency can investigate upon mere suspicion that the law has been violated, without a showing of probable cause.  The Court explained that:

> [An agency] has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function.  It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.  When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

*Id.* at 642-43.  The SEC thus is acting within the scope of its Congressionally-granted authority even where its investigation is based on nothing more than official curiosity.  *See, e.g.*, *Arthur Young*, 584 F.2d at 1023-24 & n.45 (quoting *Morton Salt*) (recognizing that "even if one were to regard a request for information . . . as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and public interest").

---

[2]  *See, e.g.*, *Dresser Industries*, 628 F.2d at 1380 (investigation based on Staff conclusion that company "may have engaged in conduct" in violation of the federal securities laws "falls squarely within the [SEC]'s explicit investigatory authority"); *Blinder Robinson*, 681 F. Supp. at 4 (acknowledging that "[a]s the SEC is charged with overseeing the securities industry and preventing fraud in the trading of stocks and bonds, it is well within the scope of its authority to request information necessary to dispel or confirm suspicions of which they have substantive evidence").

Here, on January 11, 2016, pursuant to its authority under Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a), and Section 21(a) of the Exchange Act, 15 U.S.C. § 78u(a), the SEC issued a Formal Order that authorizes the Division of Enforcement to investigate potential violations of the federal securities laws.   Snyder Decl. ¶¶ I-J.   The Staff, consistent with the Formal Order, seeks details about Grossman's trading activities in Ohr and any documents, including electronic mail and text messages, to determine whether violations of the federal securities laws have occurred.   The SEC's investigation – and the Subpoena issued in connection therewith – is unquestionably within the scope of the Formal Order and the SEC's Congressionally-authorized law enforcement powers.

**B.      All Administrative Requirements Have Been Satisfied**

Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), provide that the Commission may, in the course of conducting investigations, designate officers and empower them to subpoena witnesses.   The Commission issued a Formal Order in this matter designating SEC Counsel and empowering them to conduct an investigation into the trading of Ohr common stock and issuing subpoenas as appropriate.    Pursuant to Rule 8 of the Commission's Rules Relating to Investigations, investigative subpoenas may be served by several methods, including by any method conveying actual notice.   17 C.F.R. §§ 203.8 and 201.104(b)(3).   Here, a Staff attorney, designated in a Formal Order as an officer of the Commission, issued the Subpoena to Grossman and a copy of the Subpoena was served by mail on Grossman at his home.   Snyder Decl. ¶¶ K, M.   Later, an attorney for Grossman contacted the SEC about the Subpoena that his client received. Grossman's receipt of the Subpoena is not in controversy.

**C.      The Subpoena Seeks Information Relevant To The Investigation**

As the D.C. Circuit has recognized, the SEC's subpoena power is "co-extensive" with its investigative power and, thus, a conclusion that the Subpoena is too indefinite or seeks irrelevant

information is essentially "foredoomed by [the Circuit's] holding that the scope of the investigation itself is adequately bounded." *Arthur Young*, 584 F.2d at 1025.  That is, "[t]he breadth of an investigation is for the investigators to determine.  The breadth of a subpoena or of a search made in records may be excessive, but the test is relevance to the specific purpose, and the purpose is determined by the investigators." *Id.* at 1031 (quoting K. Davis, *Administrative Law Treatise* § 3.06, at 188-89 (1958)); *see also Blinder Robinson*, 681 F. Supp. at 4 (prima facie evidence that the evidence sought has potential importance in terms of the investigative objectives is sufficient to validate the scope of the request).  The threshold for demonstrating relevance, thus, is low.

There can be no question here that the information sought by the SEC is highly relevant (and, indeed, reasonably tailored) to the SEC's investigation.  The SEC need not show (i) probable cause that a violation has occurred in order to investigate possible violations of the federal securities laws or (ii) likelihood of success in a litigation that it may or may not commence at the conclusion of its investigation.  *See* Point II.A, *supra*.  Indeed, as this Court explained in *In re Grand Jury Proceedings*, 201 F. Supp. 2d 5 (D.D.C. 1999), albeit in the context of a grand jury subpoena, "[w]hether the subpoenas will reveal incriminating evidence is at this stage speculative.  Grand jury investigations, no less than other investigations, will necessarily meet dead-ends.  The point is simply that leads cannot be foreclosed before they are pursued." *Id.* at 11.

Here, the SEC is investigating trading in the common stock of Ohr prior to the company's announcement regarding the results of an exploratory study evaluating a treatment for the wet form of age-related macular degeneration.  The SEC received information that Grossman, among others, traded in Ohr common stock just prior to the announcement.  An Ohr director, who was Grossman's former business partner, and another individual who is an officer at the company have indicated that they know Grossman.  The SEC's request for documents

related to Grossman's trading, his communications around the time of his trading, and investigative testimony regarding his trading are all clearly relevant to the SEC's inquiry. Grossman's views of the propriety of his own trading activity are irrelevant to the Court's decision to enforce the SEC's Subpoena. For all of the foregoing reasons, the Court should find that the SEC has satisfied its burden on this Application.

## **CONCLUSION**

For the reasons stated above and in the SEC's Application, the SEC respectfully requests that the Court grant the Application and enter: (i) an Order, in the form submitted, requiring Grossman to show cause why he should not be ordered to produce documents and appear for testimony pursuant to the Subpoena properly issued by the SEC and served upon it; and (ii) an Order, in the form submitted, requiring obedience to the Subpoena.

Dated: June 3, 2016                    Respectfully submitted,

　　　　　　　　　　　　　　　　　 _/s/ Christian D. H. Schultz_____
　　　　　　　　　　　　　　　　　 Christian D. H. Schultz (DC Bar # 485557)
　　　　　　　　　　　　　　　　　　　　 Assistant Chief Litigation Counsel
　　　　　　　　　　　　　　　　　 Scott Friestad
　　　　　　　　　　　　　　　　　　　　 Associate Director
　　　　　　　　　　　　　　　　　 David Frohlich (DC Bar # 425928)
　　　　　　　　　　　　　　　　　　　　 Assistant Director
　　　　　　　　　　　　　　　　　 Ivan Snyder (DC Bar # 498461)
　　　　　　　　　　　　　　　　　　　　 Staff Attorney
　　　　　　　　　　　　　　　　　 Securities and Exchange Commission
　　　　　　　　　　　　　　　　　 100 F Street, N.E.
　　　　　　　　　　　　　　　　　 Washington, D.C. 20549-4010
　　　　　　　　　　　　　　　　　 (202) 551-4740 (Schultz)
　　　　　　　　　　　　　　　　　 schultzc@sec.gov

　　　　　　　　　　　　　　　　　 Attorneys for Applicant